Joseph Effron, Doing Business as Effron Auto Exchange, Plaintiff, *v.* Joseph Haile et al., Defendants.

Supreme Court, Trial and Special Term, Dutchess County, March 10, 1951.

*Alexander Goldberg* and *Joseph Jiudice* for plaintiff.

*Roger W. Roberts* for Joseph Haile, defendant.

FLANNERY, J. This case was submitted to the court for decision in the January, 1951, term, on the pleadings, some exhibits and a stipulation signed by the parties and their attorneys, intended to be dated January 4, 1951, but inadvertently dated January 4, 1950. This stipulation was expanded by the submission of an additional stipulation some time in the latter part of February which fixed the time of its submission by the words " January, 1951 " but has no date. There appears to be no conflict between the stipulations but the second determines some facts left in doubt in the first stipulation. The pleadings, exhibits and stipulations will hereinafter be denominated " the record."

On April 7, 1947, the plaintiff who is engaged in business in the city of Poughkeepsie, County of Dutchess and State of New York, sold a second hand, 1941, Pontiac Station Wagon, Model JC-29, to Cobblestone Inn, Inc., of Long Lake, New York, pursuant to the terms of a conditional sale contract, under which, among other things, title remained in the vendor until payment in full was made, for the full sum of $1,412.36, of which $500 was paid in cash, and the balance of $912.36 was payable within twelve months at the rate of $76.03 per month. The conditional sale contract also provided that the purchaser should not remove the property from the county without per-

mission of the seller, nor transfer any interest in the contract or the property. A copy of the conditional sale contract was filed on April 11, 1947, at Long Lake, New York, pursuant to section 65 of the Personal Property Law, in the office of the town clerk of the town of Long Lake, Hamilton County, New York, where Cobblestone Inn, Inc., had its principal place of business. The negotiations, purchase and conditional sale contract were all conducted and executed by George A. Smith, the president of Cobblestone Inn, Inc., in its name and for it. The conditional sale contract was also executed in its name by its secretary-treasurer Alfred E. Filos.

On or about September 24, 1947, a sale of the automobile was attempted by Cobblestone Inn, Inc., by its president, George A. Smith, to George A. Smith, individually, through a physical delivery of the property and transfer of registration but apparently no written bill of sale was made and all this was done without the knowledge of, or notice to plaintiff, and in violation of the provisions of section 73 of the Personal Property Law, and of the numbered paragraph 7 of the conditional sale contract. Subsequently, on January 3, 1948, George A. Smith, as an individual, attempted to transfer the automobile to Delor A. Yando, doing business as Downtown Motors, of Tupper Lake, New York, by physical delivery and transfer of registration without any notice to, or knowledge of plaintiff, presumably for cash in full. At the time of this second transfer the conditional sale contract between plaintiff and Cobblestone Inn, Inc., was, of course, still on file, but there was nothing indorsed upon it or the index of conditional sales nor anything filed subsequent to it to reveal the attempted transfer and delivery by Cobblestone Inn, Inc., to George A. Smith, individually, and, of course, no change or indorsement or filing was made after the delivery to Yando, doing business as Downtown Motors. On April 18, 1948, Yando attempted to sell the automobile to the defendant Joseph Haile by physical delivery and transfer of registration without the knowledge of, or any notice to, the plaintiff, presumably for full payment in cash.

All the transfers hereinabove recited subsequent to the filing of the conditional sale contract were unknown to the plaintiff until long after their consummation when, after all unpaid installments on the purchase price fixed by the contract were in arrears, on June 10, 1948, George A. Smith, by telephone, informed the plaintiff, " I sold that car to Downtown Motors on a trade-in." This was over eight months after the delivery

by Cobblestone Inn, Inc., to George A. Smith, individually, over five months after the delivery by George A. Smith, individually, to Yando, doing business as Downtown Motors, and almost two months after the delivery by Yando to the defendant, but plaintiff was not informed and did not learn of these deliveries until June 9, 1949, a year later. Plaintiff took no action to recover the automobile, made no demands either upon the defendant, of course, or upon Yando, and instructed Smith to continue payments on the contract which, it is stipulated, totalled $340 by April 13, 1949. The stipulation does not indicate whether the arrears payments were made in cash or check, nor, if by check, by individual checks of Smith or corporate check. On May 1, 1949, plaintiff gave notice to Yando of the unpaid **balance** then payable under the conditional sale contract and made demand therefor. Subsequently on June 9, 1949, plaintiff, for the first time, heard of the defendant's claim when he received, in response to his application for information, notice from the Bureau of Motor Vehicles that defendant, Joseph Haile, asserted ownership of the vehicle. This was almost fourteen months after the delivery to the defendant by Yando, doing business as Downtown Motors and about one year after plaintiff learned from Smith that the automobile had been delivered to Yando. Thus, although the plaintiff learned of the possession of Yando, doing business as Downtown Motors on June 10, 1948, he did not learn of the possession of the defendant until June 9, 1949. It is stipulated that the defendant was first informed of the claim for an unpaid balance on the conditional sale contract on June 9, 1949, when plaintiff, at Poughkeepsie, spoke with him at Tupper Lake, New York, over the telephone and written notice of plaintiff's claim was given defendant by registered mail on June 16, 1949. Smith had ceased payments after April, 1949, and in July, 1949, plaintiff, after he had heard of defendant, brought this action of replevin against the defendant and seized the automobile. Plaintiff makes no personal claim against defendant for payment in this action.

Obviously plaintiff's title continued unaffected by the transactions among Cobblestone Inn, Inc., George A. Smith, Yando, doing business as Downtown Motors, and the defendant until June 10, 1948, when he first received notice, not that Cobblestone had delivered to Smith, and not that Yando, doing business as Downtown Motors had delivered to the defendant, but merely that the automobile had been delivered to Yando,

doing business as Downtown Motors. Neither Cobblestone, Smith, Yando, nor defendant had ever received, or had, title to the automobile, which remained throughout this time in plaintiff, for the conditional sale contract was a valid agreement both at common law and by statute, and, when filed, assured plaintiff of his title and constituted constructive notice thereof to all the others (Personal Property Law, §§ 64, 65; *Baker* v. *Hull,* 250 N. Y. 484, 486–487; *Associates Discount Corp.* v. *Davis Motor Sales,* 275 App. Div. 745; *Austin* v. *Dye,* 46 N. Y. 500; *Goetschius* v. *Brightman,* 245 N. Y. 186, 194).

At this point it may aid understanding of the very confusing circumstances in this case and of their legal results to state two conclusions of the court which will generally affect the subsequent discussion.

First: Under section 61 of the Personal Property Law the use of the word " buyer " in the law is defined to include a legal successor in interest of the buyer and it will become important at some places hereinafter to know whether any subsequent holder of the automobile ever became a legal successor in interest to Cobblestone Inn, Inc. The court believes that under article 4 of the Personal Property Law, plaintiff was the only seller in this case under a conditional sale contract, that Cobblestone was the only buyer in this case under a conditional sale contract and that neither Smith, nor Yando, nor the defendant became at any time a legal successor in interest either to plaintiff, the seller, or to Cobblestone, the buyer. Examination of the New York reports has disclosed to the court no definite authority on this but it is led to the conclusion irresistibly by the similarity of the facts here to the facts in *General Motors Acceptance Corp.* v. *Schwartz* (118 N. J. L. 25, affd. 118 N. J. L. 563) and by the practical identity of the pertinent provisions not only of the contracts here and there but also of article 4 of the present New York State Personal Property Law, and the New Jersey Conditional Sales Act (N. J. Rev. Stat., tit. 46, ch. 32) at the time of the decision cited. There, a conditional vendee, who was forbidden by the contract to transfer any interest in the contract or the property, attempted to transfer the title to the property and his interest in the contract to another without any notice of his intention to the conditional vendor, and the New Jersey Supreme Court held that the person thus taking possession from the conditional vendee did not thereby become a legal successor in interest to the conditional vendee, either under the New York State Per-

sonal Property Law, or the New Jersey Conditional Sales Act. The decision was unanimously affirmed on the opinion below in the New Jersey Court of Errors and Appeals.

Second: The defendant's brief repeatedly suggests that the receipt by plaintiff of payments on the purchase price under the contract after June 10, 1948, was the receipt of an independent consideration, binding plaintiff to an implied approval, adoption and confirmation of what had been done. It needs no argument to demonstrate that the receipt of payments on the purchase price under the contract from Cobblestone Inn, Inc., the conditional vendee and debtor thereunder, was the receipt of something already owed plaintiff and could not constitute independent consideration for any other and subsequent agreement, implied either in law or in fact.

The defenses urged are as follows:

(A) That plaintiff by silence, inaction and the receipt of payments on the unpaid purchase price under the contract made an election which released his title under the contract.

(B) (1) That plaintiff ratified the delivery of the car by Cobblestone, to whomever made, by silence, inaction and the acceptance of payments on the unpaid purchase price under the contract.

(2) That plaintiff adopted and confirmed the delivery by Cobblestone, to whomever made, by silence, inaction and the receipt of payments on the unpaid purchase price under the contract.

(3) That plaintiff is estopped to assert his title by his silence, inaction and the receipt of payments on the unpaid purchase price under the contract.

(C) That plaintiff's reservation of title was void under section 69 of the Personal Property Law because plaintiff knew of Yando's possession and Yando was a retail dealer in automobiles.

(D) That plaintiff's reservation of title was void under section 74 of the Personal Property Law because he did not file in the office of the Altamont town clerk, Franklin County, New York, a copy of the conditional sale agreement between him and Cobblestone.

(E) That the plaintiff has lost all right to assert his title by his laches.

(A) Defendant asserts that plaintiff's receipt of payments under the contract after knowledge of the delivery to Yando was an election between his right to seize the automobile and

his right to collect money under the contract. The contract expressly provided otherwise, the common law had long provided otherwise (*Ratchford* v. *Cayuga Co. Cold Stor. & Warehouse Co.*, 217 N. Y. 565) and section 80-d of the Personal Property Law expressly relieved plaintiff of the necessity to make an election, or of the involuntary election at times presumed from the pursuit of an inconsistent legal remedy. A determination that these provisions of law were not here paramount would permit a conditional buyer to deprive a conditional seller of his options under the contract and statute by the simple expedient of a fraudulent attempted transfer of title with subsequent notice to the conditional seller of the delivery to another. This cannot be the law. Plaintiff was authorized, but not required, to retake the automobile under sections 73 and 76 of the Personal Property Law, which left him with his option under section 80-d to pursue either remedy without loss of recourse to the other. Of course, in fact, plaintiff here took no legal action at all, and it is elementary, in any application of the rule about election of remedies, that an election is made only by the pursuit of an inconsistent legal remedy and, then, only when the remedy is used with full knowledge of the facts (*Equitable Co-op. Foundry Co.* v. *Hersee*, 103 N. Y. 25; *Hays* v. *Midas*, 104 N. Y. 602; *Terry* v. *Munger*, 121 N. Y. 161, 167). Here, plaintiff at no time before June, 1949, was fully informed of all the facts.

(B). Any ratification, confirmation or estoppel in this case must necessarily conform to the requirements stated in *Hamlin* v. *Sears* (82 N. Y. 327, 330 *et seq.*) thus:

" The general doctrine that one may, by affirmative acts, and even by silence, ratify the acts of another who has assumed to act as his agent, is not disputed. It is illustrated by many cases to be found in the books, and set forth by all the text writers upon the law of agency. (Story on Agency, § 251 a; 2 Greenl. on Ev., §§ 66, 67; 2 Kent's Com. 616; *Thompson* v. *Craig*, 16 Abb. [N. S.] 29; *Wilson* v. *Tumman*, 6 Mann. & Gr. 236; *Watson* v. *Swann*, 11 C. B. [N. S.] 756.) But the doctrine properly applies only to cases where one has assumed to act as agent for another, and then a subsequent ratification is equivalent to an original authority. One may wrongfully take the property of another not assuming to act as agent, and sell it in his own name and on his own account, and in such case there is no question of agency, and there is nothing to ratify. The owner may subsequently confirm the sale, but this he can-

not do by a simple ratification. His confirmation must rest upon some consideration upholding the confirmation, or upon an estoppel. (*Workman* v. *Wright,* 36 Ohio St. 405.)

" Here Stanley did no act, and said no word ratifying the sale of his barley. The most that can be claimed is that after he discovered that the barley had been shipped to the defendants he made no efforts to reclaim it, and gave no notice of his title to the defendants. No estoppel can be claimed, as the defendants did not rely upon Stanley's silence, and were not, so far as appears, damaged thereby. So that it comes down to this: When the property of one man is wrongfully taken and sold by another, in his own name and for his own benefit, must the owner, when he afterward discovers the wrong, make efforts to reclaim his property, or notify the purchasers of his claim at the risk of losing his property? There is no authority holding that such a duty rests upon the owner of property wrongfully taken and converted. The mere silence of the owner, under such circumstances, will not bar his claim, if it be short of the time prescribed in the statute of limitations. The rule of *caveat emptor* applies, and the purchaser must see to it that he buys of one who owns the property or has authority to sell."

These principles are still the law of New York (*Curnen* v. *Ryan,* 187 App. Div. 6, affd. 227 N. Y. 626; *Ramsay* v. *Miller,* 202 N. Y. 72, 76; *Soma* v. *Handrulis,* 277 N. Y. 223, 231.)

(1 of B) The statement of these general principles makes it quite clear that there could, here, have been no ratification because ratification can validate only the acts of agents or professed agents but, here, neither Cobblestone, Smith, nor Yando was the plaintiff's agent or assumed or professed to act for him in any of the transactions.

(2 of B) Nor, without any independent consideration, could any implied adoption and confirmation of the acts of strangers, acting wholly without authority from him and without even any profession to represent him, be found on the facts here. The record shows no independent consideration moving to plaintiff from which the inference of confirmation could be drawn.

(3 of B) Nor is plaintiff estopped to prosecute this action by his silence, inaction and acceptance of payments from Cobblestone under the contract. He received nothing to which he was not already entitled by his contract. His silence and inaction were allowed him by article 4 of the Personal Property Law, and there is nothing in the record to show that either Yando or defendant parted with anything of value, changed position in

any way or committed himself to his detriment by any act in relation to the automobile *after plaintiff discovered the delivery to Yando*. They both, at that time, already stood in the position they now occupy, except that then the defendant had had only two months' use of the automobile instead of the fifteen months he had had a year later at the time of the replevin, and again, then the amount still due and payable to plaintiff under the conditional sale contract for the automobile was $340 greater than it was a year later at the time of the replevin. Indeed, defendant's position improved with the passage of time and plaintiff's reservation of title became less valuable. Estoppel is an equitable device available only to those who have suffered injury by reliance on the misleading silence, omission or act of another at the time of a transaction, when his knowledge thereof, before its consummation, charged him in conscience with an obligation to reveal his claim or interest. Here, all the transactions on which the defendant seeks to rest an estoppel occurred long before plaintiff ever heard of any of them, or of Yando or the defendant. He neither did nor omitted anything by which either Yando or the defendant was led to take the position in which he now is. He dealt only with the buyer under the conditional sale contract and had no contact at all, before May 1, 1949, with Yando, or, before June 9, 1949, with the defendant. It was June 10, 1948, when plaintiff first learned that Cobblestone no longer had the automobile and it was May 1, 1949, when he first learned that Yando's possession was in hostility to, and denial of, his reservation of title, and at both those times the automobile had already been taken and paid for by both Yando and the defendant, and the time when conscience might have required plaintiff to speak had long since past.

(C) Defendant's appeal to section 69 of the Personal Property Law is of no avail. The provisions of that section are apparently a restatement of the common law that preceded it (*Fitzgerald* v. *Fuller*, 19 Hun 180; *Cole* v. *Mann*, 62 N. Y. 1, 4–5; *Frank* v. *Batten*, 49 Hun 91; *Ludden* v. *Hazen*, 31 Barb. 650; *Milicie* v. *Pearson*, 110 App. Div. 770; *Smith* v. *Clews*, 105 N. Y. 283; 114 N. Y. 190, 195; *Green* v. *Wachs*, 254 N. Y. 437, 440–441). Both statute and common law make void the reservation of title to a seller against purchasers under a resale from the buyer *when goods are delivered under a conditional sale contract and the seller expressly or impliedly consents that the buyer may resell them prior to the performance of the condition for the transfer of title*. Here, the only conditional sale

contract was the contract between plaintiff and Cobblestone which expressly forbade any resale; Cobblestone was not a dealer in automobiles so no implication of consent to resale could lie in the sale to Cobblestone; the delivery by Cobblestone to Smith was neither a resale in the ordinary course of business nor for value. Neither the delivery by Cobblestone to Smith, nor either of the subsequent deliveries by Smith or Yando, was made under any conditional sale contract, or by a seller under a conditional sale contract or his legal successor in interest, or to a buyer under a conditional sale contract or his legal successor in interest. True, Yando was a dealer and he took the automobile from Smith for value and did resell it to the defendant in the ordinary course of business and for value but none of this was done under any conditional sale contract or by a seller or a buyer under a conditional sale contract or a legal successor in interest of either but in hostility to, and denial of, the only conditional sale contract in the case, namely, that between plaintiff and Cobblestone and by persons asserting they were transferring or receiving absolute title. And, of course, the section can apply only to the transactions that actually occurred and not to whatever plaintiff may have been misled to think had taken place; but it must be remembered that plaintiff at no time regarded Yando, or had reason to regard him as a buyer under a conditional sale contract or the legal successor in interest to such a buyer.

(D) The defendant complains because plaintiff never at any time filed a copy of the conditional sale contract in the Altamont town clerk's office, Franklin County, where both defendant and Yando resided. The removal of the automobile from the town of Long Lake to the town of Altamont, however, was made either by Smith or Yando, of whom neither was a buyer under the contract or his legal successor in interest. Consequently, section 74 of the Personal Property Law which applies only when the goods are removed by the buyer from one filing district to another, is inapplicable here and cannot help the defendant. The record does not establish who made the removal but it is certain that it was not Cobblestone, the only buyer under the conditional sale contract and, as we have seen, none of the others ever became its legal successor in interest.

(E) The defense of laches is not available to the defendant here because it is an equitable device, effective only in equitable actions and this is an action at law for replevin and, further, because under subdivision 4 of section 48 of the Civil Practice

Act the time within which an action for replevin may be brought is fixed at six years. Certainly, no court, either of law or equity, could be allowed to find laches before the expiry of the time limited by the Civil Practice Act for the commencement of the action.

The absence from the record of any positive statement of the character in which Smith made payments to plaintiff after June 10, 1948, whether as president of Cobblestone in its behalf, or as an individual from his own funds, and the omission to indicate positively whom plaintiff or Smith regarded as the payor, may seem to leave it doubtful that plaintiff's receipt of payments from Smith was the receipt of payments from one obligated under the conditional sale contract and so was the receipt of independent consideration from which an inference of an implied acceptance of Yando's possession should be taken and the plaintiff be held to have approved, adopted and confirmed Yando, a dealer in automobiles, as a legal successor in interest to Cobblestone. The only indication in the record is that the payments were made by Cobblestone through Smith. The record presents nothing to support any other conclusion and, without something more, payment on a corporate liability by the corporation's president must be taken to be a payment by the corporation. It must be remembered that plaintiff was ignorant of the delivery by Cobblestone to Smith and there is literally nothing in the record that should have led plaintiff to think that Smith was making the payments as an individual. Smith, of course, knew of the intermediate delivery to himself but he also knew that he had not informed plaintiff of it and plaintiff rested under the belief that the delivery to Yando had been by Cobblestone directly, subject to the contract, but without any assumption of Cobblestone's liabilities thereunder by Yando.

Only if it appeared, as nowhere is even hinted, that the payments were made by Smith's personal check could any doubt on the subject arise and that doubt would, it seems to the court, quickly succumb to the statement in the stipulation that, when Effron was told by Smith " I sold that car to Downtown Motors on a trade-in ", Effron " instructed the said George A. Smith to continue payments on the contract." Effron knew all payments before June 10, 1948, had been made by Cobblestone and, ignorant that Cobblestone had attempted to sell the automobile to Smith, Effron obviously sought more payments from the only person from whom he thought he had any legal right to enforce

payment, and apparently thought he was receiving them in the same manner as before from the same person. However, even if plaintiff had thought the payments were being made by Smith, individually, from his own funds, and even if plaintiff's receipt thereof were now held to have constituted the receipt of independent consideration sufficient to have bound him to an implied willingness to accept Yando as legal successor in interest to Cobblestone Inn, Inc., the record presents nothing sufficient to charge him with an implied agreement of that kind. In fact, Yando had taken and dealt with the automobile in utter hostility to plaintiff's reservation of title. The apparent transfer by Cobblestone of its interest to Yando raised no inference that Yando had become or desired to become Cobblestone's legal successor in interest under the contract charged with its obligations for no one interested had complied with section 73 of the Personal Property Law. In those circumstances, it could not reasonably be inferred from plaintiff's receipt of an independent consideration from Smith that plaintiff had agreed Yando's possession should become that of Cobblestone's legal successor in interest. Neither Smith nor plaintiff could commit Yando to the obligations under the conditional sale contract, either alone or by any agreement between them, and it is difficult to perceive how promises by Smith, individually, to make payments under the contract could have induced plaintiff to agree that Yando should have all the advantages but none of the obligations of a legal successor in interest to Cobblestone. Certainly his experience up until then with Smith would not have filled him with an enduring confidence in Smith's promises or undertakings, either on his own or on Cobblestone's account. The implication of plaintiff's receipt of payments from Smith, individually, most favorable to the defendant here would be that plaintiff recognized and accepted Yando as one who had taken only subject to plaintiff's reservation of title and the conditional sale contract but had not assumed any obligations thereunder and was, therefore, not a legal successor in interest to Cobblestone. The actual transactions were all, of course, unknown to plaintiff at all times and no implication of approval of them could be found in the payments.

All findings necessary to a judgment for the plaintiff on this decision are hereby made, and judgment awarding the chattel to the plaintiff will be granted, with costs,

Submit judgment,